**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) Plaintiff, ) ) v. ) ) CHRISTUS HEALTH d/b/a ) CHRISTUS ST. VINCENT REGIONAL ) MEDICAL CENTER, ) ) Defendant. ) ) | **COMPLAINT** Jury Trial Demand. |

**NATURE OF THE ACTION**

This is an action under Title I and/or Title V of the Americans with Disabilities Act of 1990, as amended (ADA) and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and retaliation and to provide appropriate relief to Charging Party, Asheley Coriz. As alleged with greater particularity in Paragraphs 1- 82 below, the Equal Employment Opportunity Commission ("Commission") alleges that Defendant Christus Health d/b/a Christus St. Vincent Regional Medical Center ("CSV") in Santa Fe, New Mexico failed to remedy the disability harassment of Ms. Coriz; failed to provide reasonable accommodations for her disability; and discharged her because of her disability, because of CSV's need to make reasonable accommodation to her hearing impairment, and/or discharged her in retaliation for opposing acts or practices made unlawful under the ADA.

1

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, (Title VII), 42 U.S.C. § 2000e- 5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.  At all relevant times, the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of New Mexico.

## PARTIES

3.  Plaintiff, the Equal Employment Opportunity Commission (the Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

4.  At all relevant times, Defendant CSV (the "Employer") has continuously been a foreign non-profit Texas corporation doing business as Christus St. Vincent Regional Medical Center in Santa Fe, New Mexico and has continuously had at least 15 employees.

5.  At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. §12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which

incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6. At all relevant times, Defendant Employer has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Asheley Coriz filed a charge with the Commission alleging violation of the ADA by Defendant Employer.

8. On June 13, 2019, the Commission issued to Defendant Employer a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. On July 30, 2019, the Commission issued to Defendant Employer a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

## GENERAL FACTUAL ALLEGATIONS

11. Defendant CSV employs over 500 employees throughout Texas and New Mexico.

12. After two interviews with Defendant CSV, Asheley Coriz was given a conditional offer of employment as a Histology Technician in the Histology Lab of CSV on February 27, 2018 and subsequently began her employment with CSV on February 28, 2018.

13. Prior to her beginning work at Defendant CSV's Histology Department, Ms. Coriz was qualified to perform as a Histology Technician as shown by her past employment history.

14. Because Ms. Coriz is deaf, she requested and was provided an American Sign Language (ASL) interpreter for the day long orientation and onboarding process on March 5, 2018. The orientation was facilitated by Michael Silva and Barbara Lujan from the Human Resources Department at CSV.

15. As part of her orientation, Ms. Coriz had an appointment with CSV's Employee Occupational Health Nurse where Coriz again disclosed she was deaf.

16. Once she began working in the Histology Department, Ms. Coriz repeatedly had to remind her immediate supervisor Dante Luna, Section Coordinator, to face her when he was doing the oral instructions and training on the laboratory protocols and procedures. These frequent requests for accommodation for her disability occurred within on or about the second and third weeks of employment with Defendant CSV.

17. Ms. Coriz was qualified to perform the duties of a Histology Technician and knew how to perform her job as a Histology Technician as demonstrated during her second interview with Defendant CSV. But Ms. Coriz also knew from past experience with two different Histology labs that the protocols and procedures for processing pathology specimens are different from lab to lab, each with their own preferences and different models of equipment which required time to get accustomed with.

18. During her employment with Defendant CSV, Ms. Coriz also asked

Supervisor Luna to repeat some of the training procedures and asked him to write down some of these procedures. Because he refused these accommodations for her hearing, Ms. Coriz finally asked Supervisor Luna to let her watch and visually observe how he was performing the tasks, so she could do her job the way CSV wanted it done.

19. Supervisor Luna refused the additional types of training to Ms. Coriz and his demeanor changed towards her. Supervisor Luna was hostile to Ms. Coriz, telling her that she could not watch him and, repeatedly told her that she already knew how to do the task and he had already told her how to do it once.

20. In response to one request from Ms. Coriz, Supervisor Luna pulled her resume from his desk and yelled at her that she should already know how to do the job.

21. Another time, Supervisor Luna yelled at Ms. Coriz, "didn't you f***ing hear me, I'm tired of telling you the same thing."

22. The work environment for Ms. Coriz was so hostile that she often cried at work due to the harassment by her Supervisor Luna and finally asked Director Randall Schulz to stop the harassment. Director Schulz was the immediate supervisor of Mr. Luna and the second-line supervisor for Ms. Coriz at CSV.

23. Instead of providing a remedy, Director Schulz and Supervisor Luna transferred Ms. Coriz to the position of Histology Assistant in the Histology Department.

24. Ms. Coriz had prior experience as a Histology Assistant but the CSV computer systems and programs were different from the previous labs where she had worked and was given only one-week training by the person she was replacing for a temporary period of time.

25. At her previous employers' histology labs, Ms. Coriz was provided with a VRS (Video Relay Service) telephone system to aid with receiving and making telephone calls as part of her clerical duties.

26. The job of Histology Assistant at CSV requires repeated use of the telephone as set forth in the CSV's written job description for the position.

27. Ms. Coriz is deaf and could not use the regular telephone at the Histology Assistant's desk in the CSV lab.

28. On April 4, 2018, Ms. Coriz contacted Director Schulz and requested the accommodation of installing a specialized video-type telephone, referred to as Video-Relay-Service (VRS) equipment.

29. The VRS equipment provides online ASL interpretation through the phone to allow a deaf person the ability to make and receive telephone calls.

30. Ms. Coriz already owned the VRS telephone equipment, so no additional purchase of equipment was necessary for Defendant CSV.

31. The accommodation request by Ms. Coriz required Defendant CSV to do two things: first, it required CSV to connect the VRS telephone to their computer network at the location; and second, it required to CSV to agree to work with Sorenson Communications, the company that would provide the online ASL interpreter services for the telephone calls through Coriz's VRS phone.

32. Ms. Coriz was never provided with this reasonable accommodation of a VRS phone or any of the other reasonable accommodations she requested from Defendant CSV, with the exception of the ASL interpreter provided for her new hire orientation session.

33. On April 16, 2018, Ms. Coriz met with Barbara Lujan in the Human Resources Department at Defendant CSV to complain about the failure to provide the accommodation in setting up the VRS telephone and to complain about the ongoing harassment and lack of training accommodations by her immediate supervisor Dante Luna.

34. Ms. Coriz met with Barbara Lujan in the HR department because Director Schulz had failed to do anything about her previous complaints regarding Supervisor Luna.

35. Also, on April 16, 2018, Director Schulz and Supervisor Luna requested an in-person meeting with Ms. Coriz, to include Director Mary Jo Metzger (the immediate supervisor of Director Schulz).  Director Schulz and Supervisor Luna told Ms. Coriz they wanted a meeting to review a Work Success Plan ("WSP") with her for the purpose of reviewing her performance and setting timelines to meet certain goals.

36. As Ms. Coriz understood the importance of the WSP meeting, she asked Director Schulz and Supervisor Luna to provide an ASL interpreter as an accommodation to assist her with the meeting scheduled with Director Metzger, Director Schulz and Supervisor Luna.

37. Director Schulz then cancelled the April 16 meeting with Ms. Coriz based on Coriz's request for an ASL interpreter to be present at the WSP meeting.

38. Director Schulz then told Ms. Coriz the meeting would be rescheduled as he needed to reach out to the HR department about providing an interpreter for the WSP meeting.

39. Director Schulz described the goal of a CSV Work Success Plan, including the one scheduled for Ms. Coriz on April 16, 2018 was to retain her, give her work expectations in writing, and give her a time frame to meet the expectations; not terminate her.

40. When Ms. Coriz requested an ASL interpreter for her scheduled WSP meeting with Director Metzger, Director Schulz and Supervisor Luna, Sandra Dominguez, Executive Director of HR for CSV, became involved with Ms. Coriz's requests for accommodations.

41. On or about April 17, 2018, HR Director Dominguez held a meeting with HR's Barbara Lujan and Director Schulz to discuss what to do with Coriz's requests for an ASL interpreter and other accommodations previously requested, including the VRS telephone.

42. At the meeting on April 17, 2018 with HR's Lujan and Director Schulz, HR Director Dominguez was informed that Ms. Coriz had previously requested the accommodation of installing the VRS telephone for her use in the Histology Lab.

43. On the evening of April 17, 2018, Director Schulz called Ms. Coriz and informed her not to return to work until further notice as she was being placed on paid administrative leave by Defendant CSV.

44. On April 19, 2018, Director Schulz sent Ms. Coriz a text message to report to a meeting with him and a representative from the HR department on the morning of April 20, 2018.

45. On April 20, 2018, Coriz was discharged by Defendant CSV in a meeting with Barbara Lujan from Human Resources and Director Schulz. Ms. Coriz was told her discharge was for alleged poor work performance, specifically Ms. Coriz's alleged inability to keep up with the workload as a Histology Technician.

46. For her last three weeks of her employment, since March 26, 2018, Ms.

8

Coriz had been assigned and was performing the duties of the Histology Assistant, not Histology Technician at Defendant CSV.

47. Ms. Coriz had never been provided written performance goals for her position as Histology Technician by Director Schulz or Supervisor Luna until she was provided with her termination notice by Defendant CSV on April 20, 2019.

48. Defendant CSV's termination notice indicated Ms. Coriz was eligible for re-hire.

49. None of Ms. Coriz's requests for ASL interpreters as reasonable accommodations were granted by Defendant CSV except for her orientation on March 5, 2018.

50. Defendant CSV never engaged Ms. Coriz in an individualized interactive discussion about any of her reasonable accommodation requests; including, but not limited to:

   a. CSV's failure to accommodate her requests for written instructions and protocols during training with Supervisor Luna,

   b. CSV's failure to accommodate her requests for visual observations of Supervisor Luna's work as part of her training;

   c. CSV's failure to accommodate her with the installation of the VRS telephone in the Histology Department;

   d. CSV's failure to grant her request for an ASL interpreter to observe during the training by the Pathology Assistant; and

   e. CSV's failure to accommodate her request for an ASL interpreter to attend the meeting to go review her Work Success Plan with Director Metzger, Director Schulz and Supervisor Luna.

9

51. In a span of forty-eight hours, after reviewing her reasonable accommodation requests in Director Schulz's meeting with the HR department on whether to grant any of Ms. Coriz's requested accommodations, and without meeting with her, CSV made the decision to discharge her rather than discuss her accommodation requests or place her on a Work Success Plan.

## STATEMENT OF CLAIMS

52. Since at least March 5, 2018, Defendant Employer has engaged in unlawful employment practices at its Santa Fe, New Mexico location that employed Ms. Coriz, in violation of Sections 102(a) and (b) and of Title I and Section 503(a) of Title V of the ADA, 42 U.S.C. §12112(a) and (b) and 42 U.S.C. §12203(a).

53. Asheley Coriz is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

54. Asheley Coriz is deaf which substantially limits her major life activity of hearing.

## FIRST CLAIM FOR RELIEF
[**ADA - Failure to Accommodate- 42 U.S.C. § 12112(b)**]

55. The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

56. Asheley Coriz requested reasonable accommodations as described in Paragraphs 11-50 above. Defendant Employer knew of the Charging Party's limitations and failed to provide the reasonable accommodations requested or any other accommodations.

57. Defendant CSV engaged in unlawful employment practices in violation

of Section 102(b) of the ADA, 42 U.S.C. § 12112(b), by failing to provide the requested reasonable accommodations, described above, to Ms. Coriz within the meaning of the ADA.

58. Defendant CSV failed to engage in the interactive process in good faith with Ms. Coriz to discuss her requested reasonable accommodations which would have allowed her as a deaf employee to perform the essential functions of her job as Histology Technician.

59. The effect of the practices complained of by Defendant Employer herein has been to deprive Ms. Coriz, a qualified individual with a disability, of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

60. Defendant Employer's unlawful employment practices complained of herein were intentional.

61. The unlawful employment practices complained of herein were done with malice or with reckless indifference to the federally protected rights of Ms. Coriz.

### SECOND CLAIM FOR RELIEF
[**ADA Discharge -42 U.S.C. § 12112(a)**]

62. The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

63. Defendant CSV engaged in unlawful employment practices in violation of Section 102(a) of the ADA, 42 U.S.C. § 12112(a), by terminating the employment of Ms. Coriz, a qualified employee with a disability, because of her disability.

64. Defendant CSV engaged in unlawful employment practices in violation of Section 102(a) of the ADA, 42 U.S.C. § 12112(a), by terminating the employment of Ms. Coriz, a qualified employee with a disability, because of her need for the reasonable accommodations for her disability.

65. The effect of the practices by Defendant CSV complained of herein has been to deprive Ms. Coriz, a qualified employee with a disability, of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

66. Defendant CSV's unlawful employment practices complained of herein were intentional.

67. Defendant CSV's unlawful employment practices complained of herein were done with malice or reckless indifference to the federally protected rights of Ms. Coriz.

## THIRD CLAIM FOR RELIEF
### [ADA – Disability Harassment- 42 U.S.C. § 12112(a)]

68. The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

69. From at least March 2018 through April 2018, Defendant CSV engaged unlawful employment practices at the Christus St. Vincent Regional Medical Center in Santa Fe, New Mexico in violation of Section 102(a) of the ADA, 42 U.S.C. § 12112(a), by subjecting Ms. Coriz to severe or pervasive harassment constituting a hostile work environment because of her disability.

70. As described with more particularity above, Defendant CSV's Section Coordinator Dante Luna, the immediate supervisor for Ms. Coriz, regularly subjected Ms. Coriz to disability-based derogatory comments and treatment. The derogatory comments included, but not limited to comments about her hearing and comments such as "didn't you f***ing hear me, I already told you once". In addition to the derogatory comments, Ms. Coriz's supervisor repeatedly refused to allow her to visually observe his practices and procedures when working on

a pathology specimen in the Histology Lab. Additionally, Ms. Coriz's supervisor repeatedly refused to provide written protocols and procedures necessary to perform her job.

71. Despite Ms. Coriz repeated reports of the harassing comments and conduct to Director Schulz, Supervisor Luna's supervisor, and the human resources department, CSV tolerated and allowed this disability-based hostile work environment to continue and failed to take prompt or effective remedial action to correct it.

72. Defendant CSV knew or reasonably should have known about the harassing comments and conduct of Supervisor Luna described above due to the complaints it received, the open and notorious nature of Supervisor Luna's conduct, as well as Supervisor Luna's employment record while working for Christus St. Vincent Regional Medical Center.

73. Defendant CSV failed to take prompt or effective action to prevent, correct or remedy the hostile work environment.

74. The effect of the practices complained of in the foregoing paragraphs has been to deprive Ms. Coriz of equal employment opportunities and otherwise adversely affect her status as an employee at Defendant CSV because of her disability.

75. Defendant CSV's unlawful employment practices complained of in the foregoing paragraphs were intentional.

76. Defendant CSV's unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to Ms. Coriz's federally protected rights under the ADA.

**FOURTH CLAIM FOR RELIEF**
**[ADA – Retaliation – 42 U.S.C. § 12203(a)]**

77. The allegations contained in the foregoing paragraphs are hereby

incorporated by reference with the same force and effect as if fully set forth herein.

78. Since at least March 14, 2018, Defendant CSV has engaged in unlawful employment practices in its Christus St. Vincent Regional Medical Center in Santa Fe, New Mexico in violation of 42 U.S.C. § 12203(a) because Asheley Coriz opposed unlawful disability employment practices.

79. Since at least March 14, 2018, Asheley Coriz complained to her managers and supervisors, as well as the human resources department at Christus St. Vincent Regional Medical Center in Santa Fe, New Mexico about the hostile work environment she was experiencing because of her disabilities, requested accommodations, and made complaints about the failure of her managers, supervisors and the human resources department to grant her reasonable accommodations for her hearing impairment. Because of her opposition to practices made unlawful by the ADA, CSV subjected Ms. Coriz to adverse terms and conditions of employment, including but not limited to, retaliatory discharge.

80. The effect of the practices complained of above has been to deprive Asheley Coriz of equal employment opportunities and otherwise adversely affect her status as an employee, including but not limited to, retaliatory discharge because she opposed unlawful disability employment practices of Christus St. Vincent Regional Medical Center.

81. Defendant CSV's unlawful employment practices complained of above were intentional.

82. Defendant CSV's unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Asheley Coriz.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, successors, assigns and all persons in active concert or participation with it, from engaging in any practice that permits the harassment of employees because of disability, the discharge of individuals because of their disabilities, the denial of reasonable accommodations to individuals with disabilities, and any other employment practice which discriminates on the basis of disability.

B. Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, successors, assigns and all persons in active concert or participation with it, from engaging in any practice that permits retaliation against employees because they opposed unlawful employment practices, made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under Title I of the ADA.

C. Order Defendant Employer to institute and carry out policies, practices and programs which provide equal employment opportunities for qualified individuals with disabilities and for individuals who oppose unlawful employment practices, and which eradicate the effects of its past and present unlawful employment practices, including disability discrimination and retaliation.

D. Order Defendant CSV to make whole Asheley Coriz, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement and/or frontpay.

E.      Order Defendant CSV to make whole Asheley Coriz by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the paragraphs above, including job search expenses or medical expenses, in amounts to be determined at trial.

F.      Order Defendant CSV to make whole Asheley Coriz by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in the paragraphs above, including but not limited to emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and other nonpecuniary losses, in amounts to be determined at trial.

G.      Order Defendant CSV to pay Asheley Coriz punitive damages for its malicious and/or reckless conduct described in the paragraphs above, in amounts to be determined at trial.

H.      Grant such further relief as the Court deems necessary and proper in the public interest.

I.      Award the Commission its costs in this action.

## JURY TRIAL DEMANDED

The Commission requests a jury trial on all questions of fact raised by its complaint.

DATED August 20, 2019.

SHARON FAST GUSTAFSON
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
1801 L Street, NW
Washington, D.C.  20507

MARY JO O'NEILL
Regional Attorney
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Phoenix District Office
3300 North Central Avenue
Suite 690
Phoenix, Arizona 85012

LORETTA MEDINA
Supervisory Trial Attorney

*/s/ Jeff A. Lee*
Jeff A. Lee
Senior Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Albuquerque Area Office
505 Marquette NW, Suite 900
Albuquerque, New Mexico 87102
(505) 738-6723
Jeff.Lee@eeoc.gov

Attorneys for Plaintiff